## Case No. 16,668.

### UNITED STATES v. WESTERVELT.

[5 Blatchf. 30.] [1]

Circuit Court, S. D. New York. Nov. 13, 1861.

SLAVE TRADE — RECEIVING NEGROES ON BOARD—CRIMINALITY OF SUBORDINATES— CONSTRAINT AS EXCUSE.

1. Under the fourth section of the act of May 15, 1820 (3 Stat. 600), in regard to the slave trade, the offences prohibited may be committed by any citizen of the United States, on board of any vessel, whether foreign or American.

2. Under that section, it is an offence to receive negroes on board of a vessel, from persons who have seized them and brought them to the vessel's side, in violation of the law; and any person of the vessel's company, on board of the vessel, who is competent to commit a crime, commits such offence by voluntarily receiving, or actually participating in the reception of, the negroes on the vessel, with the intent to make them slaves.

3. Facts and circumstances stated which would amount to a restraint, so as to deprive the acts of a voluntary character, in the case of the subordinates of a vessel.

This was an indictment founded on the fourth and fifth sections of the act of congress of May 15, 1820 (3 Stat. 600), entitled "An act to continue in force 'An act to protect the commerce of the United States and punish the crime of piracy,' and also to make further provisions for punishing the crime of piracy." The defendant [Minthorne Westervelt], at the time of the commission of the offence charged, was the third mate of the ship Nightingale.

E. Delafield Smith, U. S., Dist. Atty.

Charles O'Conor and John McKeon, for defendant.

Before NELSON, Circuit Justice, and SHIPMAN, District Judge.

NELSON, Circuit Justice (charging jury). This indictment is founded upon the fourth and fifth sections of the act of congress of May 15, 1820 (3 Stat. 600). The fourth section is as follows: "If any citizen of the United States, being of the crew or ship's company of any foreign vessel engaged in the slave trade, or any person whatever, being of the crew or ship's company of any ship or vessel, owned in the whole or part, or navigated for, or in behalf of, any citizen or citizens of the United States, shall land from any such ship or vessel, and, on any foreign shore, seize any negro or mulatto, not held to service or labor by the laws of either of the states or territories of the United States, with intent to make such negro or mulatto a slave, or shall decoy, or forcibly bring, or carry, or shall receive, such negro or mulatto on board any such ship or vessel, with intent as aforesaid, such citizen or person shall be adjudged a pirate, and, on conviction thereof before the circuit court of the United States for the district

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

wherein he may be brought or found, shall suffer death." The fifth section annexes the same penalty against any citizen or foreigner who shall, under the circumstances stated in the previous section, forcibly confine or detain any negro or mulatto on such vessel, with the intent to make him a slave, or aid and abet in thus confining and detaining him. The third count of the indictment charges that the prisoner, a citizen of the United States, of the ship's company of the ship Nightingale, a foreign vessel, engaged in the slave trade. did, piratically and feloniously, receive eight hundred negroes on board of such vessel, with the intent to make them slaves. The seventh count charges the prisoner, a citizen of the United States, with aiding and abetting in the forcible confinement and detention of the negroes, with intent to make them slaves. This is made an offence under the fifth section of the act. We lay this count out of the case, inasmuch as, if the prisoner is guilty at all, he is guilty as principal. Indeed, though there are several counts set forth in the indictment, we do not think it necessary to call your attention to any other than the third.

The prisoner at the bar is a citizen of the United States; and hence it will not be material to trouble you with any observations upon the point, as to whether the ship Nightingale, at the time of the alleged crime, was an American vessel, or owned, in whole or in part. by American citizens. The prisoner being a citizen, the offence may be committed by him on board of any vessel, whether foreign or American. We have, therefore, confined the application of the evidence in the case to the third count in the indictment, which lays the offence against the prisoner as a citizen of the United States, and charges that he did, piratically and feloniously, receive the negroes on board of the ship Nightingale, with the intent to make them slaves.

A question has been made, whether or not some force does not enter as an element into the crime, under this clause of the statute. There are four descriptions of the offence, to be found in this section: (1) Landing and seizing the negroes; (2) forcibly bringing and carrying them on board; (3) decoying them; (4) receiving them on board of the vessel. The first two comprehend the use of force as a necessary element; the last two, decoying or receiving on board, do not. The question here is under the last clause of the statute. We instruct you, that receiving the negroes on board, from persons who had seized and brought them to the ship's side. in violation of the law, may constitute this offence, under the statute.

It has been urged, that the offence under this section can be committed only by some person who has an interest in the negroes, or, at least, by some person who has the power upon the ship to receive or reject them. But this, we think, is too narrow a construction of the act. Our view of it is, that any person of the ship's company, on board of the ship, who is competent to commit a crime, is capable of committing the offence under the statute, by voluntarily, freely, and willingly receiving the negroes upon the ship, with the intent to make them slaves, or by actually participating in such reception, with the like intent, which makes him a principal in the offence. The statute excludes any such distinction, in our judgment, as is set up by the counsel for the prisoner. Any citizen, being of the crew or ship's company of the vessel, may be charged with the offence. This is the only limit as to the condition of the persons exposed to the crime. We agree, that a person may engage or participate in the reception of the negroes on board, and still not be guilty of the offence. He may be acting under compulsion, physical or moral. The act may be done against his will. He may be beguiled into it by the arts or power of others, until it is too late for him to extricate himself. The hands and subordinates of the ship may be deceived by the master and others engaged and interested in the crime, under pretext that the vessel is engaged, or is to be engaged, in a lawful trade, and may not be undeceived until they are in such a situation, on a semi-barbarous coast, as to be in a degree helpless, and obliged, or apparently obliged, to go on in the performance of their duty on the ship. Undoubtedly, in such cases. and under such circumstances, a court and jury should look very deliberately and astutely into the facts and circumstances, and, before a conviction is had, should be satisfied that the prisoners acted freely, voluntarily, willingly, and without any restraint from the facts and circumstances surrounding them. These are considerations that will always enter into the deliberations of the court and jury, in the case of the trial of subordinates of the crew of the vessel. and are fit and proper to influence the jury in passing upon the guilt or innocence of the prisoner. They apply exclusively to the subordinates of a vessel, who are obliged to obey the orders of their superiors. We do not mean that an unlawful order is to be obeyed. We refer to the general condition of the subordinate; when he has not the power to disobey. The considerations referred to have no application to the master of a vessel, or to the owner of negroes, who engages in the slave trade.

Now, with these views of the law, it will be for you to look into the evidence in the case. and examine and weigh it, and determine whether or not the prisoner voluntarily, freely, and willingly, without any restraint from the facts and circumstances surrounding him, participated in receiving the negroes on board of the vessel at the time mentioned, with the intent to make them slaves. The first inquiry naturally arising

out of the facts in the case is, whether the prisoner had knowledge, at Liverpool, that the vessel was intended to engage in the slave trade; for, if he had, then undoubtedly this fact would have considerable influence upon your views of his subsequent acts on board. On this point, no witness has brought home to the prisoner this knowledge; and the question rests, therefore, upon the character of the cargo and the fitting out of the vessel for her voyage to the African coast. In explanation of this part of the case, evidence has been given that the cargo and fitting out of the vessel corresponded with cargoes for a lawful trade on that coast. The cargo of the vessel, therefore, as to the intent and purpose of the voyage, is equivocal, and, of itself, may as well lead to the conclusion of a lawful as of an unlawful trade; and, if the evidence is equipoised, as to its effect in this respect, its bearing upon the case is very much qualified, and perhaps neutralized. If you should find that the prisoner had no knowledge, at Liverpool, of the intention of the master of the vessel to engage in the slave trade, then your inquiry will be as to the time when he is chargeable with this knowledge, and whether, after that, he was in a condition to extricate himself from the vessel; or, in other words, whether or not you will hold him responsible, under his condition and the attending circumstances, for not escaping from the vessel, so as to avoid any participation in the offence. These are considerations which belong to you, and upon which it is your province to pass. The evidence before you, bearing upon this part of the case, has been very fully examined and discussed, and we are very sure that the whole of it is familiar to you, and shall not take up your time in going over it. The question you have to determine is, whether or not the prisoner did participate in the reception of the negroes, on board of the Nightingale, from persons who had seized them on the land, and brought them by force to the vessel, freely, voluntarily, and willingly, without any restraint from the facts and circumstances surrounding him at the time, and with the intent to make them slaves. If you come to the conclusion that he did, then he is guilty; if not, then he is not.

Evidence has been given of the good character of the prisoner previous to this charge. This is always admissible in behalf of the prisoner; and, though it will not overcome satisfactory proof of guilt, yet it is entitled to weight in a case which is left open to explanation on the evidence. With these remarks, we submit the case for your consideration.

The jury did not agree on a verdict.